Argued and submitted June 5, Court of Appeals reversed and judgment of conviction reinstated August 28, 1984

## STATE OF OREGON,
*Petitioner on review,*

*v.*

## TINA MARIE GOFF,
*Respondent on review.*

(TC 8201-0092; CA A26101; SC S30500)

686 P2d 1023

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. On the petition and brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Kay Kiner James, Assistant Attorney General, Salem.

Thomas A. McHill, of Morley, Thomas, Kingsley & Reuter, Lebanon, argued the cause and filed a response to the petition and brief for respondent on review.

JONES, J.

## JONES, J.

Defendant was convicted by a district court jury of child neglect as defined in ORS 163.545. The Court of Appeals reversed because it found no substantial evidence to support the verdict. *State v. Goff,* 66 Or App 695, 675 P2d 1093 (1984). We allowed the state's petition for review and reverse the holding of the Court of Appeals, thus reinstating the judgment of conviction.

The facts of this case are for the most part undisputed. On October 31, 1981, the defendant was living with her two children, ages eight years and 22 months, and two other adults. Around 9:30 p.m., defendant and the other adults left the children alone in the house to attend a Halloween party at a tavern several blocks away. When they left, the eight-year-old child was watching television in the living room and the 22-month-old child was asleep in the back bedroom. Defendant testified at trial that the older child was able to use the telephone and that defendant left the phone numbers of the tavern and a neighbor with the child. Because it was Halloween, trick-or-treaters had come to the house earlier in the evening. The defendant testified that she did not know if anyone had come to the house after she left. Defendant spent the entire evening, until 2 a.m. on November 1, at the tavern. She had eight or nine beers during the evening.

Between 10:45 and 11 p.m., two adults friends of the defendant drove from the tavern to defendant's house to pick up a camera and, while there, checked on the children. The older child was still watching television and the younger child was not observed. Approximately three hours later, after the tavern closed, defendant returned to her house to find it filled with heavy smoke. Attempts to resuscitate the older child failed. The younger child was already dead. Both died from asphyxiation.

The adults in the house were cigarette smokers. The fire marshall testified that there were "matches lying around and candles around." Some of the matches had been struck but not ignited. Although the cause of the fire was not explained, the fire marshall testified that in his opinion the fire began in the back bedroom and that the fire started from an open flame brought into the area.

This case involves interpretation of the child neglect statute, ORS 163.545, which defines child neglect as:

"(1)    A person having custody or control of a child under 10 years of age commits the crime of child neglect if, with *criminal negligence,* he leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child.

"(2)    Child neglect is a Class A misdemeanor." (Emphasis added.)

ORS 161.085(10) defines "criminal negligence" as follows:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

The Court of Appeals construed ORS 163.545 to require a "recognized or unrecognized dangerous condition in defendant's home." 66 Or App at 698. The commentary to the Proposed Oregon Criminal Code says nothing about such a requirement. Instead, the commentary indicates that determining whether a defendant has endangered the health or welfare of a child is to be viewed from a "totality of the circumstances" perspective. The commentary to that section of the Oregon Criminal Code states:

"The term 'unattended' means that the child is left under circumstances in which no responsible person is present to attend to his needs. Leaving a three month old child in the care of a nine year old child might, in some cases, amount to child neglect. An alleged offense under this section must be viewed as a totality of circumstances; the age of the child, place where left, whether it was left alone or in the company of others, period of time left and, finally, whether the sum of these circumstances [is] such as would endanger the health or welfare of the child." Proposed Oregon Criminal Code § 174 (1970).

In analyzing the child neglect statute, ORS 163.545 it is helpful to separate the statute into two segments. The section of the statute which reads "leaves the child unattended in or at any place for such period of time as may b

likely to endanger the health or welfare of such child," refers to the physical factual elements of the crime. The other section of the statute, which refers to "criminal negligence," involves the mental state or culpability of the defendant. For a defendant to be guilty of the crime of child neglect, there must be sufficient admissible evidence of both the physical and mental segments of the statute.

■ Turning first to the physical factual element, we note that the statute is not temporally restricted. Relevant facts as to the physical element include not only the conditions existing at the time the child was left unattended, but also the circumstances occurring during the entire length of time the child was left alone. For instance, a child could be left in a bathtub for a few moments while the adult answers the telephone or the child could be abandoned in a bathtub for several hours. A child might be safe for a few moments, but might well drown if left for any significant period of time. The period of time the child was left unattended is relevant to the physical factual elements of the crime.

■ With respect to the culpability aspect of the child neglect statute, the words in the criminal negligence statute "fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists" also are not time restricted. The statute encompasses the state of mind of a defendant throughout the time the child is left unattended. Returning to our baby in the bathtub example, when the baby is left unattended an adult could have every intention of returning within moments, but if he or she sat down and began drinking martinis and talking to an old friend, the adult's capacity to be aware of the risk would be reduced over time. An adult's capacity to be aware at any time while the child was left unattended is relevant to the mental element of the crime.

■■ We hold that determination of child neglect is based on a totality of the circumstances in respect to both the factual element and the culpability element of the crime. Viewing the facts from a totality of the circumstances, there was sufficient evidence in this case for a jury to find the defendant guilty of child neglect. At a minimum, she left unattended her 22-month-old child and eight-year-old child with no supervision for a period of five hours on Halloween night in a home

containing unlit matches and flammable materials. Every responsible adult should know that fire is a likely danger when children are left alone with access to matches. Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury to so find. *State v. Krummacher,* 269 Or 125, 138, 523 P2d 1009 (1974); *State v. Zauner,* 250 Or 105, 110, 441 P2d 85 (1968).

■       The second issue in this case is whether certain evidence was properly admitted by the trial court. The evidence in question was (1) the whereabouts of the mother and that she was drinking beer, and (2) the fact that there was a fire and that the children died in the fire. At the trial, the judge found the evidence relevant. The Court of Appeals majority held this challenged evidence was not probative of any fact essential to a conviction but that it was not reversible error to admit the evidence because "[a] jury cannot be expected to understand a case tried in a vacuum." 66 Or App at 698. The defendant argues that the evidence was not probative and was prejudicial to the defendant.

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We hold that not only was the evidence relevant, but any prejudice to the defendant was significantly outweighed by the probative value of the evidence.

■       In order to prove the crime of child neglect, the state must show that the defendant failed "to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists." The fact that the defendant went to a party at a tavern is directly relevant to the justifiability of the risk. A jury cannot answer the question, "was it

justifiable for the defendant to leave her children unattended?," without knowing why defendant left. For example, a jury might find a defendant's absence justifiable if the reason for leaving was to take a family member to the hospital because of a medical emergency. Therefore, the evidence of defendant's conduct and whereabouts was properly submitted to the jury.

The fact that the mother had eight or nine beers that evening goes directly to her awareness of the risk. The defendant testified that she was affected by the alcohol and was "feeling good." A jury could find that as the defendant consumed more alcohol, her awareness of the risk to her children decreased. Therefore, admission of evidence as to her whereabouts and her conduct was proper.

The other evidence to which the defense objected was the fact that there was a fire and that the children died in it. The state was required to prove a substantial risk in "a place or for such period of time as may be likely to endanger the health or welfare of such child." This evidence was relevant to show that the children's health was endangered and the risk was substantial. The adults in the house smoked cigarettes. The fire marshall found a matchbook of paper matches and an ashtray with cigarette butts and both unlit and spent matches in it. These items were found in the living room on the table directly in front of the couch. Further, defendant testified that the older child knew where the matches were in the house. The fire marshall determined the fire started in a closet in the back bedroom and that the source of the fire was brought into that area. As mentioned, the fire marshall testified that in his opinion the fire was started by an open flame. Evidence of the fire is therefore probative to show that the children's health was in fact endangered.

The criminal negligence statute speaks of substantial risk. The fact of the children's death is directly relevant to the amount of the risk. The risk of leaving a child unattended could be slight, for example, the risk that the child might dirty his pants and be uncomfortable or that the child might become hungry. The magnitude of risk could be graver—that the child, while left at home unattended, might injure himself. Or the amount of risk could be substantial, for example, the

risk that the child could start a fire and die. The fact that the children died indicated that the risk was substantial.

As this court stated in *State v. Krummacher,* 269 Or 125, 144, 523 P2d 1009 (1974):

"*** Where the evidence has some probative value, we allow the trial judge some latitude in deciding whether the detrimental aspect of the testimony outweighs its probative value, and we normally do not second-guess the trial judge in the absence of an abuse of discretion. *State v. Harris,* 241 Or 224, 329-42, 405 P2d 492 (1965). 1 Wharton's Criminal Evidence 286-87, § 155, has the following to say on the subject:

"*** Much discretion is left to the trial judge, and his rulings will be sustained if the evidence which is admitted tends even somewhat remotely to show that a fact in controversy did or did not exist.' "

In conclusion, we find that there was sufficient evidence, in view of all the circumstances, for the jury to find the defendant guilty of child neglect. The evidence admitted at trial was done so properly. The Court of Appeals is reversed and the judgment of conviction is reinstated.