Argued and submitted May 4, affirmed on appeal, remanded on cross-appeal for redetermination of damages and otherwise affirmed August 5, reconsideration denied September 25, petition for review denied October 20, 1987 (304 Or 279)

# INTERNATIONAL WINES WEST, INC. et al,
*Respondents - Cross-Appellants,*

*v.*

# PATRICK DISTRIBUTING CO. et al,
*Appellants - Cross-Respondents.*

## (16-84-07260; CA A39875)

740 P2d 225

David Brewer, Eugene, argued the cause for appellants - cross-respondents. With him on the briefs were Herb Lombard, and Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

Gerry Gaydos, Eugene, argued the cause for respondents - cross-appellants. With him on the brief were Hoyt, Gaydos & Churnside, P.C., Eugene.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

After a trial to the court in this action for breach of contract, judgment was entered for plaintiffs. Defendants appeal, and plaintiffs cross-appeal the amount of damages awarded. We affirm on the appeal and remand on the cross-appeal.

Defendant Patrick Distributing Company (PDC) was a beer distributorship. For several years, Bang, president of International Wines West (IWW), had discussed with defendant Patrick, president of PDC, the possibility of IWW's purchasing PDC. The discussions began in earnest in the spring of 1983, and a sale agreement was signed in July, 1983. During that time, IWW made contacts with supplier breweries, prepared to change the name of the corporation and applied for an OLCC license. The sale did not close by the September deadline, but negotiations continued. In December, 1983, a second agreement was signed. IWW was to "take possession" on February 1, 1984.

In the December contract, the parties agreed to waive the Bulk Transfers Act, ORS 76.1010 *et seq:*

> "Buyer hereby waives compliance by Seller with the provisions of the bulk sales law of the State of Oregon, and Seller agrees to indemnify Buyer against and hold Buyer harmless from any and all claims, demands, liabilities, and obligations (and any and all expenses and costs incurred in connection with or in defending against the same, including reasonable attorney's fees) arising out of the failure or alleged failure of the Seller to comply with any such law in respect of such sales and transfers. Further, Seller shall pay and hold Buyer harmless from all obligations due creditors of Seller existing as of the date of closing of this agreement, except for the obligations assumed by Buyer hereunder."

The parties also agreed, as an express condition precedent, that PDC would allow IWW "direct access to all of the business records of [PDC] during the period prior to closing." In the last week of January, IWW hired an accountant to examine the business records and to prepare a list of accounts payable. PDC refused to give the accountant access to the relevant records without an assurance that IWW would not contact PDC's creditors.

On January 31, plaintiffs' attorney told PDC's attorney that the "deal was dead" and followed that statement with a letter dated February 1 terminating the transaction.[1] Plaintiffs then brought this action for breach of the December 3 agreement, alleging that defendants had breached the contract by failing to allow access to the records.

On the appeal, defendants assign as error that the trial court failed to find that they had performed all conditions precedent and that plaintiffs had breached the contract by wrongful termination. They argue that the parties' agreement to waive the bulk transfer notice provisions was tantamount to plaintiffs' relinquishing the right to contact PDC's creditors or to pay PDC's debts. Therefore, they assert, defendants had the right to insist on assurances that IWW would not use the accounts payable list to alert creditors about the sale. Plaintiffs' evidence was that IWW's intention behind its insistence on seeing the accounts payable list was to ascertain what creditors might claim that the sale was ineffective and to be certain that those creditors be paid before closing.[2] However, the argument continues, IWW's waiver of the Bulk Transfer Act allowed PDC to deal with its creditors on its own terms. Therefore, defendants conclude, plaintiffs' refusal to provide assurances that they would not contact creditors excused defendants' failure to provide records.

We do not agree. The Bulk Transfer Act is for the protection of creditors of a transferor, against whom a bulk transfer is ineffective unless the transferor provides a sworn list of creditors, ORS 76.1040(1)(a), (2), the parties prepare a schedule of transferred property, ORS 76.1040(1)(b), the transferee gives 10 days' notice to the listed creditors before taking possession of the goods, ORS 76.1050, and the list is maintained for six months by the transferee. ORS

---

[1] IWW later learned that PDC had been negotiating with Big Sky Bottling Company during January and that on February 3, 1984, Big Sky had loaned PDC $500,000. In April, 1984, Big Sky purchased the stock of PDC pursuant to a contract which had been attached to the February 3 loan agreement.

[2] At the time of the negotiations, PDC was in financial difficulty and had unliquidated debts as to which it was anxious to obtain favorable adjustments. Defendants contend that, if IWW had contacted the creditors, the consequences could have been disastrous for defendants. The creditors could have threatened to hold up the sale unless they were paid. Defendants then would lose the opportunity to adjust the debts.

76.1040(1)(c). Failure to comply with the act leaves a transferee vulnerable to claims from creditors. ORS 76.1110.

■ Although the waiver of the statutory requirements might have resulted in IWW's not contacting PDC's creditors, the waiver by itself does not preclude contact. It means only that IWW relieved PDC of *its* obligation to provide a list of creditors and that PDC agreed to indemnify IWW for any consequences of the failure to comply with the law. IWW did not agree that it would not make its *own* determination of existing obligations nor act on that knowledge for its own protection. Indeed, in the absence of specific language in a sales agreement that a transferee is giving up the right to ascertain existing debts, sound business practice would usually require a transferee to make that determination, particularly in the light of its having waived the six-month limitation in the act.[3]

■ Defendants also assign error to the trial court's denial of their motion for judgment of dismissal on the ground that plaintiffs had failed to perform an express condition precedent:

"(8) *CONDITIONS.* The following are conditions precedent to the closing of this sale:

"* * * * *

"b. That Buyer obtain all the necessary licenses, permits, or other approvals of all applicable regulatory agencies required for the conduct of the business presently conducted by Seller, specifically including, but not limited to, the *approval* of the Oregon Liquor Control Commission." (Emphasis supplied.)

That provision did not require IWW to have a license at closing. Indeed, the evidence was that OLCC will not grant a license before a transaction is legally closed. Approval for the change of ownership had been given by the OLCC investigator

---

[3] Defendants argue that the failure to provide the assurance which they sought violated ORS 72.6090, which allows a party to demand in writing reasonable assurances of performance. Plaintiffs had no obligation not to contact creditors, and therefore defendants could not demand assurances that they would not.

and by his supervisor, who had the authority to issue the license. IWW had met the condition.[4]

Defendants next assign as error that the trial court admitted evidence that PDC did not allow access to its employes as required by the agreement. Defendants argue that the only issue before the trial court was whether defendants breached the contract relating to access of records and that resolution of that issue does not involve defendants' motive. Therefore, they assert, plaintiffs' attempt to establish motive was irrelevant and prejudicial. We agree that evidence of defendants' motive does not prove whether or not they breached the agreement. However, the trial court found that the evidence was relevant to show the background of PDC's actions. It was not an abuse of discretion to admit the evidence in order to complete the picture of the events and place the parties and their conduct in their proper setting. *See State v. Goff,* 66 Or App 695, 698, 675 P2d 1093, *aff'd* 297 Or 635 (1984).

■    Plaintiffs cross-appeal from the trial court's determination that they were entitled only to damages accruing after September 15, 1983, the failed closing date in the July agreement. The December agreement provided, in part:

"30.  *SPECIFIC PERFORMANCE.* In the event Seller shall fail or refuse to consummate this transaction, in lieu of any and all other rights and remedies that it may have against Seller due to such failure or refusal, Buyer shall have the right to * * *.

"* * * * *

"b.   Elect reimbursement by Seller of the actual out-of-pocket expenses and costs (including reasonable legal and accounting fees) incurred by it in connection with the negotiations of this agreement and the transactions contemplated hereby."

---

[4] Defendants also argue that the trial court erred in denying their motion to dismiss on the ground that plaintiffs had terminated the agreement on or before the end of the closing date of February 1 and that the termination was not excused by an anticipated repudiation of the contract on the part of defendants. We disagree. Access to the records was an express condition precedent. Defendants' failure to provide that access unconditionally prevented timely performance. *See Dan Bunn, Inc. v. Brown,* 285 Or 131, 143, 590 P2d 209 (1979). Once defendants had refused to allow examination of the records, plaintiffs had no obligation to wait until after the closing date to give notice of termination.

We agree with plaintiffs that the evidence of the dealings shows that the parties intended that plaintiffs could be reimbursed for all of their expenses, not just for the expenses specifically and solely attributable to the agreement sued on. The July agreement was part of an ongoing attempt by the parties to consummate a sale. When that agreement did not close in September as anticipated, the parties continued to attempt to complete what amounted to the same transaction through a continuing, never terminated, course of negotiations. If the issue is one of fact, there is no basis in the record for the court's conclusion that negotiations *began* on September 15. *Saga Enterprises, Inc. v. Coldwell, Banker and Co.,* 287 Or 169, 598 P2d 285 (1979). If the court concluded that, as a matter of law, plaintiffs were not entitled to recover any expenses before that date, it was incorrect. The provision is ambiguous in the light of the circumstances in which it was written, *see Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985), but it is certain that negotiations began sometime before the *July* agreement. We remand for the trial court to determine when negotiations in fact began and for the redetermination of plaintiffs' damages.[5]

Affirmed on appeal; on cross-appeal, remanded for a redetermination of damages and otherwise affirmed.

---

[5] We have considered defendants' remaining assignments and find no error.