Submitted December 20, 2013, reversed March 19, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JORGE EVAN NEGRETE,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI111726; A150874

323 P3d 535

Peter Gartlan, Chief Defender, and Meredith Allen, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and De Muniz, Senior Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for second-degree child neglect, ORS 163.545.[1] Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal. Defendant argues that the state failed to establish that defendant's actions constituted a gross deviation from the standard of care that a reasonable parent would observe. *See State v. Paragon*, 195 Or App 265, 270, 97 P3d 691 (2004). We review to determine whether a rational factfinder could find that the essential elements of the crime were proved beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *Id.* at 267; *State v. Savage*, 214 Or App 343, 345, 164 P3d 1202 (2007). "Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury to so find." *State v. Goff*, 297 Or 635, 640, 686 P2d 1023 (1984). We reverse.

The essential facts are not disputed. June 1, 2011, was a particularly chilly day in Redmond. Around 12:15 p.m., two witnesses saw a three-year-old boy, clad only in underwear and rain boots, running down the street alone. One of the witnesses dialed 9-1-1 and coaxed the child inside her home. Police officers responded, and the child managed to lead them to his home, two and a half blocks away. Defendant, the child's father, had been asleep and had not realized that his son had been gone for at least 45 minutes. The officers cited defendant for second-degree child neglect. Thereafter, defendant cooperated with DHS to implement a child-safety plan. He installed chain locks on the front and back doors of the house to prevent his son from wandering away again.

Nevertheless, in midmorning of June 17, 2011, defendant's son left the house through the door to the

---

[1] ORS 163.545(1) provides:

"A person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child."

garage.[2] The child was barefoot and pantless and accompanied by the family dog. He wandered three and a half blocks before a witness noticed the child pushing a toy dump truck. The same officers were dispatched, and they recognized the child from the June 1 call. One officer carried the child home. Defendant's garage door was rolled open when the officers arrived. They knocked at the front door. After several minutes, defendant appeared looking as though he had been sleeping. The officers cited defendant again with second-degree child neglect.[3]

The parties agree, based on testimony and records, that the child had been gone for at least 25 or 30 minutes before the officers brought him home. The child's parents did not believe that their son could open the motorized garage door. They also thought that opening the door leading from the house to the garage required more force than their son could exert.[4]

At trial, defendant moved for a judgment of acquittal, arguing that the state failed to prove that he acted with criminal negligence. Defendant contended that his conduct was not a gross deviation from the standard of care. The trial court denied defendant's motion. The jury found defendant guilty of second-degree child neglect but only for the June 17 incident.

The parties do not dispute that the three-year-old's unsupervised excursion "may be likely to endanger the health or welfare of such child." Criminal liability, however, does not follow unless a defendant acts with "criminal negligence." ORS 163.545. Criminal negligence

"means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and

---

[2] The door between the garage and the house lacked a childproof lock, and the door between the garage and the outdoors could be rolled open by a motor. The record does not reveal how the motorized door could be activated or whether the child was capable of operating it.

[3] The child's mother was not home during either incident, and defendant acknowledged that he was in charge of supervising their son during the day.

[4] After the second episode, defendant installed a childproof lock on the door to the garage and disabled the motor for the exterior garage door.

degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(10). To constitute criminal negligence, defendant's conduct must not only create the requisite risk; defendant's unawareness of the risk must be a gross deviation from the standard of care exercised by a reasonable person.

A pair of cases illustrate the application of this term. In *Savage*, a witness noticed a four-year-old boy riding a tricycle in the middle of a residential street. 214 Or App at 345. When an officer arrived to investigate, the child was inside his home, and his mother appeared as though she had been sleeping. *Id.* We reversed the defendant's judgments of conviction for second-degree child neglect and recklessly endangering a person. We observed that there was no evidence, nor any that could be inferred,

"regarding how much time elapsed between when the child left the house and when the passerby saw him in the street, how long defendant had been asleep when she came to the door, whether she had been asleep when the boy left, whether the boy had ever before left the house unsupervised, what precautions defendant had taken to prevent him from doing so, or how the boy found the tricycle."

*Id.* We concluded that the defendant's unawareness of the risk was not a gross deviation from the standard of care that a reasonable person would observe in the situation. That is because, "although perfect adults might keep the children under their care either within sight or secured within locked dwellings, those who fail to do so are not for that reason alone grossly deviating from a widely shared, reasonable societal norm." *Id.* at 347.

In *Goff*, the defendant was convicted of child neglect after leaving her two children, aged eight years and 22 months, alone in their house for five hours while she attended a Halloween party. 297 Or at 637. The children had access to matches and candles, and a fire started during the defendant's absence. *Id.* The children both died of asphyxiation from heavy smoke. *Id.* The court observed that "[e]very responsible adult should know that fire is a likely danger when children are left alone with access to matches" and

held that, given the totality of the circumstances, there was sufficient evidence for a jury to find the defendant guilty. *Id.* at 639-40.

This case presents a situation similar to *Savage*. *See Paragon*, 195 Or App at 270-71 (emphasizing the "necessity of considering the totality of the circumstances"). Unlike *Goff*, there is no evidence that defendant left his child without supervision for several hours with dangerous implements or instrumentalities. After the June 1 incident, defendant took affirmative steps to eliminate the future risk of harm. He cooperated with DHS and worked on a child-safety plan. He installed chain locks on two of the three doors that could be used to leave the house. Defendant's failure to secure the garage door shows that his efforts were imperfect, but they were meaningful, even if they failed. Defendant had not disregarded DHS's help and had acted to contain a fearless toddler. We conclude that the evidence was insufficient to permit a reasonable factfinder to find that defendant's unawareness of the risk was a *gross* deviation from the standard of care exercised by a reasonable person. To be sure, defendant's unavailability and inattention to his three-year-old was not a model moment in care, and that lapse is relevant to the totality of the circumstances. *See Goff*, 297 Or at 639 (observing that "[a]n adult's capacity to be aware at any time while the child was left unattended is relevant to the mental element of the crime"). Yet, as in *Savage*, failing to keep his child under his care was not a gross deviation from "a widely shared, reasonable societal norm." 214 Or App at 347. Given the totality of the circumstances, the evidence was insufficient to permit a rational factfinder to find the essential elements of the crime beyond a reasonable doubt. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal.

Reversed.