Argued and submitted December 22, 2020, reversed October 20, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GENE RAE MONTGOMERY,
*Defendant-Appellant.*

Lincoln County Circuit Court
18CR39345; A170563

501 P3d 1089

Defendant appeals a judgment convicting him of second-degree child neglect, ORS 163.545, resulting from an incident in which he mistakenly left his girlfriend's seven-year-old son, N, at a McDonald's restaurant. In the first of two assignments of error, defendant challenges the trial court's decision denying his motion for a judgment of acquittal and argues that the state failed to prove that he left N unattended, that there was insufficient evidence that the circumstances likely endangered N's health or welfare, and that the state failed to prove that defendant's mistake in leaving N was a gross deviation from the standard of care. *Held*: Defendant did not leave N "unattended" for purposes of second-degree child neglect. This conclusion obviated the need to reach defendant's other arguments.

Reversed.

Paulette E. Sanders, Judge.

Sarah De La Cruz, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Weston J. Koyama, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him of second-degree child neglect, ORS 163.545, resulting from an incident in which he mistakenly left his girlfriend's seven-year-old son, N, at a McDonald's restaurant. In the first of two assignments of error, defendant challenges the trial court's decision denying his motion for a judgment of acquittal and argues that the state failed to prove that he left N unattended, that there was insufficient evidence that the circumstances likely endangered N's health or welfare, and that the state failed to prove that defendant's mistake in leaving N was a gross deviation from the standard of care. Because we conclude that defendant did not leave N "unattended" for purposes of second-degree child neglect, we do not reach defendant's other arguments and also do not reach his second assignment of error, a challenge to one of the conditions of his probation. We reverse.

In reviewing a trial court's denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Long*, 294 Or App 192, 193, 430 P3d 1086 (2018).

While traveling to a campsite, defendant pulled over at a McDonald's so his girlfriend, Bruner, could use the restroom. A close family friend, MacKay, and her two sons were traveling with them in a separate car and also went inside to use the restroom with Bruner. Defendant waited in the car with the daughter he shares with Bruner and with Bruner's son, N, both of whom were sleeping in the back. Shortly after Bruner left to go inside, N woke up and said that he had to use the restroom, so defendant told N to follow his mother inside. None of the others who went inside saw N leave the car, and they did not encounter him in the restaurant. When Bruner and MacKay and her sons returned to the cars, Bruner looked in the back seat and, in the dark, thought she saw N was still in there sleeping. Defendant did not mention that N had left to follow Bruner, and he did not confirm that N had returned with her. Without realizing

that N had not returned, the party went to look for a campsite and then to Walmart to purchase some items for their trip. While Bruner was placing the items that she had purchased in the back of the car, she and defendant realized for the first time that N was missing. They immediately headed back to McDonald's to look for him, while McKay stayed behind to search for N inside the Walmart.

Meanwhile, at McDonald's, N was searching for his family and was found in the lobby by customers. The restaurant's assistant manager, Jones, testified at trial that a customer alerted him to the situation and that N was crying and looking for his parents. After attempting to communicate with N without much success, Jones called the police. By the time Officer Smith arrived, N was calm but appeared to have been crying. N eventually disclosed that he was seven years old and was able to write his first name but did not provide additional information.

Bruner and defendant arrived back at the restaurant about an hour after they had left. Bruner rushed inside to retrieve N while defendant stayed behind with their daughter, who was still sleeping in the car. Smith went to interview defendant, who indicated that he had sent N into the restaurant to find his mother and use the bathroom. He admitted that he could not say that he watched N get back into the car, but noted that they had been in a rush and he had assumed everyone was buckled in when they left. Defendant was adamant that he had not left N on purpose and stated that the children are quiet, so no one noticed that N was not in the back seat. Smith decided to arrest defendant for second-degree child neglect.

After the state presented its case at trial, defendant moved for a judgment of acquittal, contending that the state had not proved the elements of child neglect. He relied on *State v. Walker*, 296 Or App 1, 437 P3d 275 (2019), and *Long*, 294 Or App 192, to support an argument that N was not left unattended, given that other adults were present who could take care of him. He also argued that he was not criminally negligent when he failed to realize that N did not return with Bruner.

The state responded that *Walker* and *Long* were distinguishable because, in those cases, the defendants "were aware of a responsible person" being present to care for the children. However, here, according to the state, defendant had "no idea who was in McDonald's," nor did he "know[]" whether those individuals "were capable of attending to [N's] needs." The court agreed with the state, concluding that, unlike *Walker* and *Long*, this was not "a situation where he was leaving the child with knowledge that there would be somebody available to care for or be responsible for the child." The court denied the motion, and a jury convicted him of child neglect.

On appeal, defendant renews his arguments, including that the state failed to offer legally sufficient evidence that he left N unattended, given that he sent him inside to be under the supervision of his mother and that other adults were present and able to care for him in her absence. He also argues that the state failed to prove that he acted with criminal negligence. The state responds that defendant's failure to notice that Bruner returned without N was a gross deviation from the standard of care and the actions of the customers did not change the fact that N was unattended.

We begin with whether N was left "unattended" for purposes of ORS 163.545, which is a legal question that we review for errors of law. *See State v. Velasquez*, 286 Or App 400, 404, 400 P3d 1018 (2017) (stating that, when the "dispute on review of a ruling on a motion for a judgment of acquittal centers on the meaning of the statute defining the offense, the issue is one of statutory construction," which we review for legal error (internal quotation marks omitted)). After the legal issue is resolved, we then evaluate whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Bowen*, 280 Or App 514, 516, 380 P3d 1054 (2016).

We pause to circumscribe the precise issue that we must address. The dispute, as noted, centers on the meaning of "unattended" for purposes of ORS 163.545. It is undisputed that McDonald's staff, customers, and officers were

present for the duration of Bruner and defendant's absence and until they returned and attended to N. Defendant argues that, because those people were present to attend— and did attend—to N's needs, N was not "unattended" within the meaning of the statute. The state responds (and the trial court found) that, because defendant did not *know* that those people would be present and available to attend to N's needs, N was "unattended." Thus, we must determine whether a child can be "unattended" within the meaning of the statute where, as here, defendant left the child with an adult (Bruner) but, due to a mistake, other adults, without defendant's knowledge, instead attended to N's needs. In other words, we need to decide whether a defendant must *know* that the person who attends to the child would be available to do so for purposes of determining whether the child is "unattended" under the statute.

ORS 163.545 does not define "unattended," so we examine the text and context of the statute along with relevant legislative history to discern the legislative intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Prior opinions interpreting the pertinent statutory wording constitute relevant context. *Polacek and Polacek*, 349 Or 278, 284, 243 P3d 1190 (2010). Regarding legislative history, we deem the Criminal Law Revision Commission's official commentary to the Proposed Oregon Criminal Code to be "particularly persuasive." *State v. Sparks*, 267 Or App 181, 199, 340 P3d 688 (2014), *rev den*, 357 Or App 325 (2015) (citing *State v. White*, 341 Or 624, 639 n 7, 147 P3d 313 (2006)).

ORS 163.545(1) defines second-degree child neglect as follows:

> "A person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child *unattended* in or at any place for such a period of time as may be likely to endanger the health or welfare of such child."

(Emphasis added.) To prove second-degree child neglect under that statute, the state is required to prove beyond a reasonable doubt that (1) defendant left the child unattended and doing so was likely to endanger the child's health or

welfare; (2) the risk of that harm occurring was substantial and unjustifiable; and (3) the defendant's lack of awareness of that risk was a gross deviation from the normal standard of care. *State v. Paragon*, 195 Or App 265, 270-71, 97 P3d 691 (2004). In reaching that determination, the factfinder must consider the totality of the circumstances. *State v. Goff*, 297 Or 635, 639, 686 P2d 1023 (1984).

Because the parties rely on *Walker* and *Long*, and because those cases have previously construed "unattended" within the meaning of ORS 163.545, we turn to those cases.

In *Long*, we decided whether two children were left "unattended" for purposes of first-degree criminal mistreatment, ORS 163.205. *Long*, 294 Or App at 193. The defendant, his girlfriend, and two infant daughters were in a single-car accident. After the defendant and a witness were unable to free his girlfriend from the car, he told the witness he was "running" and left his two infant daughters at the scene. The witness stayed with the family until police and an ambulance arrived. *Id*. The defendant contended that the children were not "unattended" because he left the children with the witness and his girlfriend. *Id*. at 194.

In resolving the issue, we looked to the meaning of "unattended" for purposes of the second-degree child neglect statute, ORS 163.545(1). We first looked to the dictionary definition, and noted that "unattended" is defined as "not attended," "lacking a guard, escort, caretaker, or other watcher," "unaccompanied," "not cared for," "not watched with care, attentiveness, or accuracy." *Webster's Third New Int'l Dictionary* 2482 (unabridged ed 2002). Further, we looked to the official commentary to ORS 163.545, which explains that

> "[t]he term 'unattended' means that the child is left under circumstances in which no responsible person is present to attend to his needs. Leaving a three month old child in the care of a nine year old child might, in some cases, amount to child neglect. An alleged offense under this section must be viewed in the totality of the circumstances; the age of the child, place where left, whether it was left alone or in the company of others, period of time left and finally, whether the sum of these circumstances are such as would endanger the health or welfare of the child."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 174, 176 (July 1970).

We concluded that the infant daughters were not left "unattended." We explained that, in light of the dictionary definitions and commentary, "a dependent person is not unattended when a responsible person is present to attend to his or her needs." *Id.* at 196. In rejecting the state's argument that the children were unattended because there was no evidence that the witness was a responsible person, we explained that the state's position shifted the burden to the defendant to show that the witness "was responsible and would attend to the children, rather than requiring the state to prove that the person was not responsible or would not attend to them." *Id*. We, therefore, concluded that the state failed to present sufficient evidence to establish the children were left "unattended" within the meaning of the statute and reversed the defendant's conviction. *Id*.

We came to a similar conclusion in *Walker*. 296 Or App 1. There, we evaluated whether the defendant left his fiancé's two-year old daughter "unattended" within the meaning of the second-degree child neglect statute where he left the child with her sleeping mother, who had taken a melatonin the night before, while he showered and smoked a cigarette. *Id*. at 3-5. During that time, the child found and ingested methamphetamine. *Id*. at 5-6. We rejected the state's argument that the child was unattended because "her age and behavior, combined with the presence of the methamphetamine in the home, required 'constant supervision.'" *Id*. at 7.

In rejecting the state's argument, we first looked to the dictionary definitions and explained that, in addition to the definitions provided in *Long*, "unattended" is defined as "lacking people in attendance," and "untended." *Id*. at 7 (citing *Webster's* at 2482). And, as in *Long*, we also relied on the Criminal Law Revision's commentary to the criminal code of 1970 and its definition of "unattended." *Id*. at 8. From there, we concluded:

"Both the dictionary definitions and the commentary suggest that the word 'unattended' is not to be construed

literally as applying only when a child is completely 'alone.' Rather, they suggest that a child is 'unattended' even when other people are present if those individuals are not responsible and capable of attending to the child's needs."

*Id.* We, thus, restated the rule *Long* announced—"the term 'unattended' describes a child only if any individuals who are present are 'not responsible or would not attend' to the child's needs." *Id.* at 10 (citing *Long*, 294 Or App at 196). We concluded that the state failed to present sufficient evidence to establish that the child was unattended, because there was no evidence presented that the fiancé would fail to awaken and attend to the child's needs. *Id.* at 10. We emphasized that the state meets its burden to establish that a child, who is left with a sleeping caregiver, is unattended "if the state proves that the caregiver was irresponsible or—because of being asleep—'would not' respond to the child's needs." *Id.* at 11.

We distill the following rules from the above authorities. First, where there is *no person present*, a child is clearly unattended within the meaning of ORS 163.545. *See, e.g.*, *Webster's* at 2482 (defining "unattended" as "lacking people in attendance," "lacking a guard, escort, caretaker, or other watcher," or "unaccompanied"). Second, where there *is* a person *present*, a child may be, but will not necessarily be, unattended. In that scenario, whether the child is unattended will depend on whether the person present is or is not "responsible" and capable of caring for the child. *See Webster's* at 2482 (defining "unattended" as "not cared for" or "not watched with care, attentiveness, or accuracy"); Commentary § 174 at 176 (explaining that "unattended" means that "no responsible person is present to attend to [the child's] needs"); *Walker*, 296 Or App at 10 ("[T]he term 'unattended' describes a child only if any individuals who are present are 'not responsible or would not attend' to the child's needs." (Citing *Long*, 294 Or App at 196.)). That determination is made considering the totality of the circumstances, including the child's age, the location where the child is left, and the period of time the child was left. *See* Commentary § 174 at 176 (so stating). It is the state's burden to prove that the person present was irresponsible to establish that a child is "unattended." *Walker*, 296 Or App at 10.

Here, we conclude that N was not "unattended" for purposes of ORS 163.545. Defendant told N to go inside McDonald's with Bruner. Unfortunately, Bruner was unaware that N was inside McDonald's and walked out without seeing him. Believing N was in the backseat, defendant and Bruner departed McDonald's. At that point, customers, staff, and later officers were all present with and cared for N until defendant and Bruner returned. The state does not contest that (1) there were people present with N; and (2) those people were responsible. And, based on the totality of the evidence, we conclude that the evidence was sufficient to establish that there were in fact responsible people present to care for, and did care for, N.

The state argues that, because defendant did not know those people would be present and able to care for N, defendant left N "unattended" within the meaning of the statute. We disagree. Nowhere in the plain text of the second-degree child neglect statute or the authorities discussed is there evidence that the legislature intended an additional requirement that a defendant *know* that the people present and attending to a child are actually available to do so. For the purposes of ORS 163.545, a child is "unattended" if left (1) without a person present; or (2) with a person, if that person is irresponsible. In other words, "unattended" for purposes of child neglect turns on whether there was or was not a responsible person present who can take care of the child's needs. The state has not supplied us with any contextual or legislative history to support its position that "unattended" for purposes of ORS 163.545 requires a defendant to know that the person attending to a child be available to do so, and we have located none.

Further, the state's argument conflates the elements of second-degree child neglect. In deconstructing the elements of ORS 163.545, the Supreme Court explained:

"The section of [ORS 163.545] which reads 'leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such a child,' refers to the *physical factual elements* of the crime. The other section of the statute, which refers to 'criminal negligence,' involves the *mental state or culpability* of the defendant. For a defendant to be guilty of the crime of child

neglect, there must be sufficient admissible evidence of both the physical and mental segments of that statute."

*Goff*, 297 Or at 638-39 (emphases added). *Goff* explained that the facts that are relevant to the "physical element include not only the conditions existing at the time the child was left unattended, but also the circumstances occurring during the entire length of time the child was left alone. *Id.* at 639. With regard to the "culpability aspect" of second-degree child neglect, *Goff* explained that the "statute encompasses the state of mind of a defendant throughout the time the child is left unattended." *Id. Goff* held that the "determination of child neglect is based on a totality of the circumstances in respect to both the factual element and the culpability element of the crime." *Id.*

Here, the state's argument that a defendant must know that the responsible person who is caring for the child would be available to do so collapses the "culpability element" of second-degree child neglect with the "physical factual element." *See Goff*, 297 Or at 639 (explaining distinction). To be sure, "unattended" describes a material element of the statutory offense of second-degree child neglect and must, therefore, be accompanied by a mental state. *See State v. Crosby*, 342 Or 419, 428, 154 P3d 97 (2007) ("The Model Penal Code— upon which the Oregon Criminal Code was indirectly based * * * refers to the object of the mental state as the 'material element.'" (Internal citation omitted.)); Model Penal Code § 2.02, comment 1 n 1, at 229 (Proposed Official Draft 1962) ("The 'material elements' of offenses are thus those characteristics (conduct, circumstances, result) of the actor's behavior that, *when combined with the appropriate level of culpability*, will constitute the offense." (Emphasis added.)); *State v. Simonov*, 358 Or 531, 537, 368 P3d 11 (2016) ("For crimes defined and set out in the Criminal Code * * * every 'material element' of the offense ordinarily requires proof of a culpable mental state. ORS 161.095(2)[.]"); ORS 161.115(1) ("If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state."). And whether a defendant *knew* that a particular circumstance or result existed, such as whether

a child is "unattended" or left in a place where a responsible person would be present, is relevant to whether a defendant *acted with the culpable mental state* of criminal negligence to commit the crime of second-degree child neglect. *See* ORS 163.545 (providing that a person commits second-degree child neglect "if, with criminal negligence, the person leaves the child unattended in or at any place for such a period of time as may be likely to endanger the health or welfare of such child"); ORS 161.085(10) (providing that "criminal negligence" "means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that a circumstance exists"); ORS 161.115(3) ("If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts intentionally, knowingly or recklessly."). However, a defendant's knowledge that there will be people present to care for a child does not inform the *physical factual element* of whether a child is "unattended" within the meaning of ORS 163.545. Therefore, considering the totality of the circumstances in this case, including the undisputed fact that there were people present and caring for N, N was not "unattended" within the meaning of ORS 163.545. As such, the trial court erred in denying defendant's motion for judgment of acquittal on this basis and we, therefore, reverse defendant's conviction. Our resolution obviates the need for us to address defendant's additional arguments related to the insufficiency of the evidence, as well as defendant's second assignment of error.

Given the totality of circumstances, the evidence was insufficient to permit a rational factfinder to find the essential elements of the crime beyond a reasonable doubt. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal.

Reversed.