Argued and submitted September 27, 2006, Nyssa High School, Nyssa, affirmed March 14, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANA YOUNIS OBEIDI,
*Defendant-Appellant.*

Washington County Circuit Court
D043078M; A127189

155 P3d 80

Mary-Shannon Storey, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General.

Before Haselton, Presiding Judge,* and Ortega, Judge, and Sullivan, Judge pro tempore.

SULLIVAN, J. pro tempore.

---

* Haselton, P. J., *vice* Linder, P. J.

**SULLIVAN, J. pro tempore**

Defendant appeals from a judgment of conviction for two counts of second-degree child neglect, ORS 163.545. She assigns error to the trial court's denial of her motion for a judgment of acquittal on one of the two counts. We affirm.

■ When reviewing the denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state and give the state the benefit of all reasonable inferences that may properly be drawn from the evidence. *State v. Miller*, 196 Or App 354, 356, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005).

Defendant left her two children, a three-year-old and a one-year-old, alone in her parked SUV while she went into a store to buy diapers. Boyd, a witness who was sitting in her car eating lunch when defendant pulled into the parking space next to her, estimated that defendant was in the store for at least 20 minutes and probably closer to 30 minutes. Defendant testified that she did not expect any danger to the girls because she was in the store only a short time, she locked the SUV and turned on the car alarm, and she left the windows partially open for air circulation.[1]

The parking lot was a high-traffic area near two large stores. It was impossible to see the SUV from inside the store. A police officer, Lee, testified that the area by the store could be considered high-crime and the police "respond to a lot of thefts, a lot of larcenies. Also, a lot of mental calls from that area."

Defendant left both children restrained in their car seats. Although defendant believed before going into the store that the three-year-old could not get out of her car seat restraints, Boyd testified that the three-year-old was moving around in the car, while the younger child remained in her seat.

While defendant was in the store, the back windows of her car were about halfway open, leaving enough space for

---

[1] The incident occurred during a time of year when the outside temperature did not represent a concern regarding the safety of the children.

either child to fit through them. At one point, Boyd saw the three-year-old lean out the window, pull on the outside door handle, and nearly fall onto the pavement. The fall to the pavement would have been approximately four feet. The windows were so far open that, according to Lee, "anybody could reach inside to unlock the door, reach inside, grab things, without having to open the door." Boyd observed that, with the windows down and the children unattended, "anyone could [have] come up and taken them."

Boyd feared that the children could fall out of the SUV or be abducted. About seven minutes after defendant entered the store, Boyd called 9-1-1. In response to Boyd's call, Officer Lee arrived at the parking lot just as defendant was returning to her car. Both children were fine when Lee arrived.

After the state rested, defendant moved for a judgment of acquittal, arguing that there was no proof that the children were likely to come to harm. The trial court denied defendant's motion and subsequently found her guilty of both counts of second-degree child neglect.

■     On appeal, defendant concedes that "the trial court found that defendant's conduct created a substantial risk that [the three-year-old] would fall out of the window and those findings were supported by sufficient evidence in the record." However, defendant argues that the state failed to offer sufficient evidence that the one-year-old was in danger. According to defendant, the state's evidence would not allow a reasonable finder of fact to infer that the child was exposed to a substantial risk of abduction, and "in the absence of a proven risk, the fact finder would have no basis upon which to [determine] * * * whether defendant's lack of awareness of that risk was a gross deviation from the normal standard of care."

The state responds that the risk of abduction was a real concern, because the children were in a vehicle in a parking lot with a high volume of traffic in a high-crime area. The state also contends that the one-year-old was in danger from the three-year-old, who was able to release the restraints on her own car seat and thus, presumably, could also undo the younger child's restraints.

■■    We begin by examining the statute under which defendant was convicted. ORS 163.545(1) provides:

> "A person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child."

We discern the legislature's intent by considering the text and context of the statute, giving words of common usage their ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Giving "may be likely to endanger" its common meaning, the phrase refers to the likelihood of *exposure* to harm, rather than the probability of a particular harm actually occurring.[2] Thus, circumstances "may be likely to endanger" when leaving a child unattended is in some degree likely to make probable a state of being exposed to harm.[3]

A determination of child neglect under the statute is based on a totality of the circumstances regarding the physical facts and the defendant's mental state. *State v. Goff*, 297 Or 635, 639, 686 P2d 1023 (1984). Conviction requires proof

---

[2] *See Webster's Third New Int'l Dictionary* 1396 (unabridged ed 2002) (defining "may" as "be in some degree likely to"); *id.* at 1310 (defining "likely" as "of such a nature or so circumstanced as to make something probable * * * : in a fair way— usu. used with a following infinitive"); *id.* at 748 (defining "endanger" as "to bring into danger or peril of probable harm or loss"); *id.* at 573 (defining "danger" as "the state of being exposed to harm : liability to injury, pain, or loss : PERIL, RISK").

[3] When the legislature wishes to require some higher level of probability of harm, it knows how to do so. *See, e.g.,* ORS 109.807(2) (authorizing issuance of a warrant to take physical custody when "the child *is imminently likely to suffer* serious physical harm or be removed from this state"); ORS 419B.521(4) (providing that, in termination of parental rights to an Indian child, termination must be supported by evidence beyond a reasonable doubt "that continued custody of the child *is likely to result in serious emotional or physical harm* to the child"); ORS 161.725(1) (establishing sentencing provisions when "the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that *seriously endanger* the life or safety of another"); ORS 419C.145(2)(b) (concerning detention when a "youth's behavior *endangers* the physical welfare of the youth or another person, or endangers the community"); ORS 417.020(1)(a) (finding that "[j]uveniles who are not under proper supervision and control, or who have absconded, escaped or run away, *are* likely to endanger their own health, morals and welfare, and the health, morals and welfare of others") (emphasis added to each quotation).

beyond a reasonable doubt "(1) that leaving the child unattended was likely to endanger her health or welfare, (2) that the risk of that harm occurring was substantial and unjustifiable, and (3) that the defendant's lack of awareness of that risk was a gross deviation from the normal standard of care." *State v. Paragon*, 195 Or App 265, 270-71, 97 P3d 691 (2004).

■■ In *Paragon*, the defendants left a seven-year-old at home alone with her nine-year-old brother for 45 minutes while they went to a doctor for a medical emergency. There was a possibility that the children might have opened the door to someone who might have done them harm, might have become ill (because of the unsanitary condition of the home) from eating without first washing their hands, or might have opened a window over a couch and fallen five feet to the ground outside. *Id.* at 267, 271. We concluded that the evidence would permit "an inference of a *possibility* of danger to the seven-year-old's health or welfare, [but] the evidence is not sufficient to permit a finding beyond a reasonable doubt that * * * the circumstances were *likely* to endanger that child's health or welfare and that there was a substantial risk of such harm." *Id.* at 271-72 (emphasis in original).

■ The likelihood of danger, however, need not be supported by statistical evidence regarding the probability of the harm occurring. In *Goff*, the defendant went to a tavern at night and left her eight-year-old and 22-month-old alone for approximately five hours in a house where matches and candles were lying around. When the defendant returned home, the house was filled with heavy smoke; both children died of asphyxiation. 297 Or at 637. Noting that "[e]very responsible adult should know that fire is a likely danger when children are left alone with access to matches[,]" the court concluded that the evidence was sufficient to permit a finding of neglect. *Id.* at 640.

Here, likewise, a reasonable finder of fact could determine that defendant's leaving her one-year-old unattended in a car was likely to endanger the child's health or welfare and that the risk of harm occurring was substantial and unjustifiable. Unlike the seven-year-old child in *Paragon* —who was in her own home and not exposed to the view of or ready contact with strangers and who was older and more

able to protect herself—the one-year-old here was entirely vulnerable in a public place. There was evidence that defendant left her children unattended in an SUV for 30 minutes. The children could be seen from outside the car. The parking lot was in a busy, high-crime area, and the children were accessible through the open windows to anyone passing through the parking lot. A finder of fact could infer that the child was probably exposed to harm from any wrongdoer who happened along.

A finder of fact could determine that the risk was substantial and unjustifiable. The child was exposed to the danger of injuries including assault and abduction. Indeed, a finder of fact could infer that the child would have been endangered even by a potential thief opening the door of the SUV: the evidence would support an inference that the three-year-old could undo the restraints on the one-year-old's car seat and thus leave the one-year-old at risk of falling if a door were open. Although the occurrence of any particular harm from passers-by may not have been probable, the evidence would permit a finding that the risk of some injury to the child's health and welfare was real and substantial. Like the *Goff* court's recognition of the likely danger of fire when children are left unattended with matches, 297 Or at 640, we conclude that responsible adults should know that harm from strangers is a likely danger when a very young child is left alone, visible, and accessible in a busy parking lot for a period of 30 minutes.

Based on our conclusion that the child was left unattended in circumstances that were likely to endanger her health or welfare, we also reject defendant's argument that a finder of fact could not find that she had the requisite mental state "in the absence of a proven risk."

Affirmed.