# Matter of Sotero RIVERA-MENDOZA, Respondent

*Decided December 22, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The risk of harm to a child required to obtain a conviction for child neglect in the second degree under section 163.545(1) of the Oregon Revised Statutes is sufficiently high that the offense is categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018).

FOR RESPONDENT: Diana M. Bailey, Esquire, Portland, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Chris Murray, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge, HUNSUCKER, Appellate Immigration Judge, and MONSKY, Temporary Appellate Immigration Judge.

MALPHRUS, Deputy Chief Appellate Immigration Judge:

In a decision dated November 16, 2012, an Immigration Judge found the respondent removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2012), as an alien present in the United States without being admitted or paroled, denied his application for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012), and ordered him removed. On November 3, 2016, we dismissed the respondent's appeal from that decision. This case is now before us on remand from the United States Court of Appeals for the Ninth Circuit for further consideration of the respondent's eligibility for cancellation of removal. The appeal will again be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico, who was convicted on April 9, 2012, of two counts of child neglect in the second degree in violation of section 163.545(1) of the Oregon Revised Statutes. On the same day, the Department of Homeland Security ("DHS") personally served him with a notice to appear. In proceedings before the Immigration Judge, the respondent conceded removability and applied for cancellation of removal.

The Immigration Judge pretermitted the respondent's application for cancellation of removal after concluding that he was statutorily ineligible pursuant to section 240A(b)(1)(C) of the Act because he had been convicted of a disqualifying offense under section 237(a)(2) of the Act, 8 U.S.C. § 1227(a)(2) (2012). Specifically, the Immigration Judge concluded that the respondent's offense of child neglect in the second degree under Oregon law is categorically a "crime of child abuse," as defined in section 237(a)(2)(E)(i) of the Act.

In our decision dismissing the respondent's appeal, we upheld the Immigration Judge's determination that the respondent was statutorily ineligible for cancellation of removal. The respondent filed a petition for review with the Ninth Circuit. On July 23, 2019, the court granted the Government's unopposed motion to remand to give the Board an opportunity to "further explain its determination that the [respondent's] second-degree neglect conviction . . . is a categorical child abuse crime under [section 237(a)(2)(E)(i) of the Act]."[1]

In particular, the motion to remand requested that we "consider, under Oregon law, whether a conviction for leaving a child under [10] years old 'unattended in or at any place for such period of time *as may be likely* to endanger the health or welfare of such child' meets the sufficiently high risk of harm standard" articulated in *Matter of Mendoza Osorio*, 26 I&N Dec. 703 (BIA 2016). Additionally, the motion referenced the Ninth Circuit's intervening decision in *Alvarez-Cerriteno v. Sessions*, 899 F.3d 774 (9th Cir. 2018), which held that a similar Nevada misdemeanor child endangerment statute was overbroad.

## II. ANALYSIS

In order to establish eligibility for cancellation of removal under section 240A(b) of the Act, an applicant must demonstrate that he "has not been convicted of an offense under section 212(a)(2) [or] 237(a)(2)." Section 240A(b)(1)(C) of the Act; *see also Matter of Cortez*, 25 I&N Dec. 301, 306–07 (BIA 2010). We agreed with the Immigration Judge that the respondent is statutorily ineligible for cancellation of removal under section 240A(b)(1)(C), because his conviction under section 163.545(1) of the Oregon Revised Statutes is categorically for a "crime of child abuse" under section 237(a)(2)(E)(i), which provides that "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse, child neglect, or

---

[1]    The respondent also requested other relief from removal, which the Immigration Judge denied. Since the stated purpose of the Government's motion to remand does not involve our decision to uphold that denial, we will not discuss it further.

child abandonment is deportable." To resolve this appeal, we must employ the categorical approach to determine if the offense defined in the Oregon statute categorically fits within the generic definition of a "crime of child abuse." *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013).[2] Whether the respondent's conviction is for a "crime of child abuse" is a question of law that we review de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2020).

We have interpreted "the term 'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008). We have also previously held that the phrase "crime of child abuse, child neglect, or child abandonment" is a unitary concept, that our broad definition of a "crime of child abuse" includes the crimes of child neglect and abandonment, and that "endangering a child can reasonably be viewed as either abuse or neglect." *Matter of Soram*, 25 I&N Dec. 378, 381 (BIA 2010); *see also Matter of Mendoza Osorio*, 26 I&N Dec. at 704.

In both *Matter of Soram* and *Matter of Mendoza Osorio*, we emphasized that a key consideration in determining whether a child endangerment-type offense constitutes a "crime of child abuse" is the risk of harm to the child. *See Matter of Mendoza Osorio*, 26 I&N Dec. at 704; *Matter of Soram*, 25 I&N Dec. at 383. We recognized that States use a variety of terms to describe the degree of threat or harm required under endangerment-type offenses and that "a State-by-State analysis is appropriate to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of 'child abuse' under the Act." *Matter of Soram*, 25 I&N Dec. at 382–83.

In *Matter of Soram*, 25 I&N Dec. at 383–86, we concluded that the offense of "child abuse—no injury—knowingly or recklessly" in violation of sections 18-6-401(1)(a) of the Colorado Revised Statutes is a "crime of child abuse." We noted that the language of the statute, which requires that a child "be unreasonably placed in a situation that poses a threat of injury to the child's life or health," had been interpreted to require a "reasonable probability" of injury to a child. *See id.* at 379, 384–85 (citations omitted).

We subsequently determined that endangering the welfare of a child in violation of section 260.10(1) of the New York Penal Law is a "crime of child abuse" because it required a person to act "in a manner likely to be injurious to the physical, mental or moral welfare of a child." *Matter of Mendoza Osorio*, 26 I&N Dec. at 705, 711–12 (citation omitted). In reaching our conclusion, we stated that the commission of "an act or acts creating a likelihood of harm to a child" required a "sufficiently high risk of harm" to

---

[2] Neither the DHS nor the respondent argue that the statute is divisible.

the child to fit within the definition of a "crime of child abuse or neglect under section 237(a)(2)(E)(i) of the Act." *Id.* at 706, 712.

Thus, in order for a child endangerment-type offense to constitute a "crime of child abuse," the statute must require proof of a "likelihood" or "reasonable probability" that a child will be harmed, not a mere possibility or potential for harm. The Ninth Circuit has deferred to our definition and has concluded that the generic "crime of child abuse" includes acts and omissions that create at least a "reasonable probability" that a child will be harmed. *Alvarez-Cerriteno*, 899 F.3d at 781; *see also Fregozo v. Holder*, 576 F.3d 1030, 1037–38 (9th Cir. 2009) (finding that the generic "crime of child abuse" does not include conduct that "creates only *potential* harm to a child" (emphasis added)).

The respondent's statute of conviction, section 163.545(1) of the Oregon Revised Statutes, provided, at all relevant times, as follows:

> A person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child.

The operative phrase, "may be likely to endanger," is not statutorily defined, and we must look to how it has been interpreted in case law. *See Matter of Soram*, 25 I&N Dec. at 383 (considering how the State's appellate courts have interpreted the operative language of the statute). In *State v. Obeidi*, 155 P.3d 80, 82 (Or. Ct. App. 2007), the Oregon Court of Appeals explained that "[g]iving 'may be likely to endanger' its common meaning, the phrase refers to the likelihood of *exposure* to harm, rather than the probability of a particular harm actually occurring." The court thus concluded that "circumstances 'may be likely to endanger' when leaving a child unattended is in some degree *likely to make probable* a state of being exposed to harm." *Id.* at 82–83 (emphasis added).

The court emphasized that a conviction for child neglect is based on the totality of the circumstances, requiring proof beyond a reasonable doubt "(1) that leaving the child unattended was *likely* to endanger her health or welfare, (2) that the *risk of that harm occurring was substantial and unjustifiable*, and (3) that the defendant's lack of awareness of that risk was a gross deviation from the normal standard of care." *Id.* at 83 (emphases added) (quoting *State v. Paragon*, 97 P.3d 691, 694 (Or. Ct. App. 2004)). The court further explained that the likelihood of danger need not be proved by "statistical evidence regarding the probability of the harm occurring," but the evidence should "permit a finding that the risk of some injury to the child's health and welfare was real and substantial." *Id.* at 83–84.

187

*State v. Goff*, 686 P.2d 1023, 1025–27 (Or. 1984) (en banc), illustrates this requirement. That case involved a defendant who went to a Halloween party at a tavern, leaving two young children alone for 5 hours in a home with matches and candles within the children's reach. Evidence was introduced that the children had died in the fire. The court found that this evidence was directly relevant to the amount of the risk, and the fact that the children died indicated that the risk was substantial. The court therefore concluded that the evidence was sufficient to support a conviction for child neglect under section 163.545.

By contrast, in *Paragon*, 97 P.3d at 695, the court held that the State did not meet its burden of proof to establish the elements of child neglect in the second degree under section 163.545(1). The defendants in that case left a 7-year-old at home alone with her 9-year-old brother for 45 minutes while they went to a doctor for a medical emergency. The State argued that these circumstances warranted an inference of danger to the 7-year-old child. The State discussed the possibility that the children might have opened the door to someone who could have done them harm, become ill from eating without washing their hands because of unsanitary conditions of the home, or opened a window over a couch and fallen 5 feet to the ground outside. *Id.* at 694–95. The court reversed the conviction, however, concluding that

> [a]lthough the state's evidence support[ed] an inference of a *possibility* of danger to the seven-year-old's health or welfare, the evidence [was] not sufficient to permit a finding beyond a reasonable doubt that, in the 45 minutes that defendants were absent from the home, the circumstances were *likely* to endanger that child's health or welfare and that there was a substantial risk of such harm.

*Id.* at 695.

Our review of how the Oregon courts have interpreted the risk of harm that must be shown for a conviction under section 163.545(1) convinces us that the requisite risk is sufficiently high to bring it within our definition "child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act. The language "may be likely to endanger" has been interpreted to require circumstances that are "likely to make probable a state of being exposed to harm," and the risk of that harm occurring must be "substantial and unjustifiable." *Obeidi*, 155 P.3d at 82–83. Because the statute requires criminal negligence and a showing of more than a mere possibility of, or potential for, harm, we conclude that respondent was convicted of a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act.

We do not agree with the respondent's argument that the Oregon statute is ambiguous with respect to the risk of harm to a child and is broader than the definition of a "crime of child abuse" previously articulated by the Board.

He relies on the Ninth Circuit's decision in *Alvarez-Cerriteno*, 899 F.3d at 776–77, where the court determined that the offense of child abuse and neglect under section 200.508(2)(b)(1) of the Nevada Revised Statutes did not qualify as a crime of "child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act. The court concluded that the statutory language, "where the child *may* suffer physical pain or mental suffering," required a "reasonable foreseeability," as opposed to a "reasonable probability," of harm—the level of risk of harm required for the generic crime under the Act. *Id.* at 782–83.

The Ninth Circuit observed that the Nevada courts had not decided the meaning of the term "may" in the child abuse and neglect statute. The court therefore relied on the interpretation by the Supreme Court of California, since the wording of section 200.508(2)(b)(1) is similar to that of California's child abuse statute. It concluded that the Supreme Court of Nevada would likely adopt California's "reasonable foreseeability" standard. *Id.* at 782. However, unlike in *Alvarez-Cerriteno*, the Oregon courts have specifically interpreted the phrase, "may be likely to endanger," and have indicated that it requires a likelihood of harm, not a reasonable foreseeability or mere possibility of harm. *See Obeidi*, 155 P.3d at 82–83; *Paragon*, 97 P.3d at 695.

Finally, we are not persuaded that the mens rea of "criminal negligence" in section 163.545(1) of the Oregon Revised Statutes requires a different interpretation. In *Alvarez-Cerriteno*, 899 F.3d at 782–83, the Ninth Circuit reasoned that the minimum mens rea of "negligence" under Nevada law further supported a finding that the "reasonable foreseeability" standard was the applicable risk of harm.

Unlike the Nevada statute, section 163.545(1) requires a mens rea of criminal negligence, which is a more stringent standard than common law negligence. *See* Or. Rev. Stat. § 161.085(10) (2012) (defining criminal negligence);[3] *Morehouse v. Haynes*, 253 P.3d 1068, 1076 (Or. 2011) (De Muniz, C.J., concurring) (noting that "[n]egligence is the least demanding" mental state, which "requires only that the defendant *should have* known about a risk," while criminal negligence "also requires that the risk be a 'gross deviation from the standard of care that a reasonable person would observe in the situation'" (quoting Or. Rev. Stat. § 161.085(10))). *See generally Buchwalter-Drumm v. State by & through Dep't of Human Servs.*, 404 P.3d 959, 970 (Or. Ct. App. 2017) (stating that "the liability analysis for

---

[3] "'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." Or. Rev. Stat. § 161.085(10).

a common-law negligence claim is . . . governed by general foreseeability principles").

As the Oregon Supreme Court has specifically stated, "The criminal negligence statute speaks of substantial risk." *Goff*, 686 P.2d at 1027; *see also Paragon*, 97 P.3d at 694. We agree that the heightened standard required of the Oregon statute is more consistent with conduct that creates a "reasonable probability" of harm to a child, as opposed to the "reasonable foreseeability" of harm that the Ninth Circuit found was required by the Nevada statute analyzed in *Alvarez-Cerriteno*, 899 F.3d at 782–83.

## III.  CONCLUSION

The Oregon State courts have determined that the language "may be likely to endanger the health or welfare of [a] child" in section 163.545(1) of the Oregon Revised Statutes requires a reasonable probability of harm to a child. Thus, the Oregon crime of child neglect in the second degree requires a minimum mens rea of criminal negligence and a reasonable probability, or likelihood, of harm to a child. We therefore conclude, based on Board precedent to which the Ninth Circuit has deferred, that the offense is categorically a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Act. Because the respondent was convicted of a disqualifying offense under section 237(a)(2) of the Act, he is ineligible for cancellation of removal pursuant to section 240A(b)(1)(C). Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).